Larry CHASE *v.* STATE of Arkansas

CA CR 93-1007                                        879 S.W.2d 455

Court of Appeals of Arkansas
En Banc
Opinion delivered July 6, 1994

*William R. Simpson, Jr.*, Public Defender, by: *William M. Brown*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

JOHN MAUZY PITTMAN, Judge. Larry Chase appeals from his conviction at a non-jury trial of theft by receiving property valued in excess of $200.00, a Class C felony. Being found to be an habitual offender, appellant was sentenced to ten years in the Arkansas Department of Correction. Appellant does not contend that he did not commit theft by receiving. He argues only that the evidence is insufficient to support a finding that the stolen property exceeded $200.00 in value. We agree and affirm as modified.

■■ At trial, appellant moved to reduce the charge to a misdemeanor. When the sufficiency of the evidence is challenged on appeal, we review the evidence in the light most favorable to the State and will affirm if there is any substantial evidence to support a finding of guilt. *Coley* v. *State*, 302 Ark. 526, 790 S.W.2d 899 (1990). Substantial evidence is that which is forceful enough to compel reasonable minds to reach a conclusion one way or another and pass beyond mere speculation or conjecture. *Austin* v. *State*, 26 Ark. App. 70, 760 S.W.2d 76 (1988).

The property owner testified that two of her eight specially manufactured and recently installed copper downspouts were stolen from her house on May 26, 1992. She testified that the eight downspouts installed in May 1992 cost $262.50 each, for a total of $2,100.00. She stated that the $262.50 price per downspout included the cost of installation. Without dispute, the two downspouts were removed from the house by an unidentified individual. Appellant subsequently came into possession of the stolen downspouts. Jerry Ford, of Blume's Scrap Metal, testified that he purchased two flattened copper downspouts from appellant on May 26, 1992, for seventy cents a pound, for a total of $48.00. Thereafter, the owner identified these downspouts as those stolen from her home.

■■ A person commits the offense of theft by receiving if he receives, retains, or disposes of stolen property of another person, knowing that it was stolen or having good reason to believe it was stolen. Ark. Code Ann. § 5-36-106(a) (1987). Theft by receiving is a Class C felony if the value of the property is less than $2,500.00 but more than $200.00. Ark. Code Ann.

§ 5-36-106(e)(1) (1987). "Value" is the market value of the property at the time and place of the offense or if the market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense. Ark. Code Ann. § 5-36-101(11)(A)(i) and (ii) (Repl. 1993). The purchase price paid by the owner for property is admissible as a factor to consider in determining market value when it is not too remote in time and bears a reasonable relation to present value. *Coley* v. *State, supra; Stewart* v. *State,* 302 Ark. 35, 786 S.W.2d 827 (1990). The State bears the burden of establishing value. *Coley* v. *State, supra.*

■ Here, there was no testimony separating the cost of the two downspouts from the cost of installation. The owner also stated that the two downspouts were replaced shortly after the theft; however, she did not state at what cost. We cannot conclude that there is substantial evidence to support the lower court's finding that the property value exceeded $200.00 as there was no testimony concerning the property value without installation. We affirm appellant's conviction of theft by receiving stolen property but reduce his conviction to a Class A misdemeanor. Ark. Code Ann. § 5-36-106(e)(3) (Repl. 1993). We remand for resentencing consistent with this opinion.

Affirmed as modified and remanded.

MAYFIELD, J., dissents.

MELVIN MAYFIELD, Judge, dissenting. I do not agree to reduce the appellant's conviction to a misdemeanor. The appellant was convicted of theft by receiving property having a value of over $200 but less than $2,500. The evidence shows that the property he received, knowing that it was stolen or having good reason to believe it was stolen, was two of eight copper downspouts from the historical "Hotze House" at 1619 Louisiana, Little Rock. The house was built around 1904 and contains 16,000 square feet. It was being renovated and the downspouts were specially manufactured for this house and were purchased for $2,100.00 (making each worth more than $250.00).

The majority opinion recognized that the definition of value in Ark. Code Ann. § 5-36-101(11)(A)(ii) (Repl. 1993) provides that "if the market value of the property cannot be ascertained,

the cost of replacing the property within a reasonable time after the offense" may be used.

It is argued on appeal that the charge should have been reduced to a misdemeanor because appellant sold the two downspouts for $48.00. The other judges agree that the value should not be fixed "as installed" and that the amount paid for them as manufactured and installed is not the correct value.

However, the State says:

> The company that manufactures the copper downspouting does so to the specifications required of the home and its installation. The purchase price of those services and materials constitute its market value and bears a reasonable relationship to its present value. The "market value" of any property is inextricably bound to its cost of production. This is just one of the considerations that go into the concept of value. Testimony of an owner as to purchase price is admissible in determining market value when it is not too remote in time and bears a reasonable relationship to present value. *Jones* v. *State*, 6 Ark. App. 7, 636 S.W.2d 880 (1992).

I agree with the State's argument. In discussing the historical development of theft by receiving 2 LaFave and Scott, *Substantive Criminal Law* § 8.10 at 422 (1986) states:

> The ordinary thief steals in order to sell the stolen property, not to use it. Yet he cannot, by himself, successfully deal with the ultimate consumer. He must operate through a middleman, the professional receiver of stolen property. Without such receivers, theft ceases to be profitable. It is obvious that the receiver must be a principal target of any society anxious to stamp out theft in its various forms.

It is fairly clear to me, that it does not help "stamp out theft" to allow one to receive stolen property and suffer the penalty of a misdemeanor because he received property reduced to the value of scrap, but which could only be replaced by property costing many times more than scrap.

I dissent.